**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **RICHARD COUGHLIN**<br>FEDERAL PUBLIC DEFENDER | 1002 Broad Street<br>Newark, New Jersey 07102 | **CHESTER M. KELLER**<br>FIRST ASSISTANT |

Hon. Edward S. Kiel
United States District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

March 18, 2021

Re:  *United States v. Mohummad Simmons*, Case No. 2:21-mj-12036

Dear Judge Kiel:

     Mohummad Simmons, through undersigned counsel, respectfully moves for bond, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*.  Given the history of this case, should the government wish to make any allegations in support of detention that are not in the Criminal Complaint or the reports by Pretrial Services, counsel asks that the government produce evidence supporting those allegations in advance of the bond hearing.

Initial Bond Hearing:  Risk of Flight

     The first bond hearing in this case was on February 3, 2021.  At that hearing, the government told the Court that after Mr. Simmons was placed on home detention by the NJ Superior Court, "the next day, on Saturday, December 19th, he went to Virginia."  Ex. 1 at 9:1-2.  The government continued:  "So he's on December 18th released from custody, on home detention in Jersey City, not permitted to leave, and the next day he goes to Virginia."  *Id.* at 9:2-4.  The prosecutor then said: "December 20th, he's in Atlanta, Georgia.  And he comes back then on December— at some point between December 20th and December 23rd, he comes back . . . ."  *Id.* at 9:5-10.

     Before the first bond hearing, undersigned counsel did not expect risk of flight to be a hotly contested issue, given that (1) the last time a bench warrant was issued for Mr. Simmons for an apparent failure to appear was in July 2014, when Mr. Simmons was 18, and (2) Mr. Simmons has lived in Jersey City his entire life, with no known contacts outside the District of New Jersey.  Counsel was given no warning of the government's proffer before the first bond hearing, and was

---

flummoxed by it. Counsel stated:

> [I] did not know about these trips, apparently to Atlanta. I don't know what—I don't have that information in front of me. Apparently the prosecutor has this information. I don't have it. So I can't respond to that.

*Id.* at 10:23 to 11:2.

The Court then questioned counsel's argument for bond based on the government's proffer:

> [Mr. Simmons] was already on home incarceration under the state—under the state charges back in December of 2020. . . . As I understand it, when his pretrial detention was denied, he was released on Level 3 and my report indicates that that was 24-hour home confinement. And what I have from the complaint is that—or *what I have [from] a proffer from the Government is that he doesn't care whether that's a condition* in any event. I mean, how am I supposed to be confident in a person that gets the most—most stringent and most restrictive conditions from a state court and *flaunts it and doesn't care whether he violates* that?

*Id.* at 13:5-15 (emphases added).

Ultimately, the Court found that Mr. Simmons posed an irremediable and unacceptable risk of flight. In reaching this finding, the Court again noted the proffer from government, stating:

> I do note that [Mr. Simmons] is on Level 3 release from the state on the charge in December 7, 2020, where he was with— supposed to be on 24-hour home confinement. I heard a proffer from the Government that he did not comply with that, and the next day he went to Virginia and thereafter was in Atlanta.

*Id.* at 24:5-10 (emphasis added).

Initial Bond Hearing: Danger to the Community

At the initial bond hearing, undersigned counsel argued that, under long-standing published Third Circuit precedent, Mr. Simmons could not legally be incarcerated for presenting a danger to the community. *See id.* at 14:9 to 15:25. Specifically, counsel noted that in the Third Circuit, in non-presumption cases, a

2

danger to the community determination can only be based upon a finding that the defendant will commit "one or more of the crimes actually specified by the bail statute." *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986). Under *Himler*, whatever danger Mr. Simmons might present to the community in potentially committing a burglary—all of which allegedly occurred in the middle of the night, when no other persons were present, and appeared to be motivated by a desire to steal drugs that Mr. Simmons has admitted to Pretrial Services he was addicted to—"may be considered only in setting conditions of release," not to deny release. *Id.*; *see also United States v. Akinola*, 2016 WL 4508230 (D.N.J.) (Linares, J.) ("Having reviewed *Himler*, the Court agrees with Defendant that only the crimes identified in [18 U.S.C. § 3142] would support a finding by the Court that the Defendant poses a danger to the community.").

In response to this argument, the prosecutor called the defense's citation to the Third Circuit's decision in *Himler* an "academic exercise," and threatened to charge Mr. Simmons with possession with intent to distribute controlled substances, at which point the prosecutor said this "would be a presumption of detention case." Ex. 1 at 17:19, 18:4-5.

The Court expressed that the safety of the community was a "secondary issue," but found that "to the extent [it] comes into play, I do find by clear and convincing evidence . . . that there's no condition or combination of conditions of release that will reasonably assure . . . the safety of the persons in the community." *Id.* at 25:13-17. The Court stated that it was unfamiliar with *Himler* but would "be prepared to discuss it further" at a future conference. *Id.* at 25:23-24.

Additional Information

In an emailed letter to the Court dated March 16, 2021, the government revealed that its proffer that Mr. Simmons went to Virginia and Georgia following his release by the New Jersey Superior Court on December 18, 2020, was incorrect, and it was actually co-defendant Deon Davis who allegedly went to Virginia and Georgia.

On March 18, 2021, undersigned counsel spoke with NJ Pretrial Services Officer Michael Estreicher. Officer Estreicher stated that, according to his system and records, there are no state detainers against Mr. Simmons. Officer Estreicher asked undersigned counsel to tell Mr. Simmons to check in with him on Monday or whenever Mr. Simmons may be released.

Undersigned counsel has also asked U.S. Pretrial Services to vet Mr. Simmons's future mother-in-law, Kimberly Lee, and his fiancée, Tatyana Lee, as bond co-signers. PTS has already approved Tatyana Lee as a third-party custodian.

Argument

      Continued incarceration while Mr. Simmons is presumed innocent would not be a faithful application of the Bail Reform Act.  Following the government's disclosure that Mr. Simmons did not actually go to Virginia and Georgia, no serious argument can be made that Mr. Simmons poses a risk of flight.  The only danger to the community that Mr. Simmons poses is that he will again commit a burglary in the middle of the night when no one is around to feed a drug habit that once had a hold of him.  But that is not a lawful reason for detaining him, under *Himler*; it is only a valid reason for imposing strict conditions of release.  Under § 3142(c), Mr. Simmons is entitled to release.  Of course, should Mr. Simmons violate a single condition of release, the Court will be able to reincarcerate him—regardless of whether the violation poses a danger to the community.  *See* 18 U.S.C. § 3148(b).

      For the foregoing reasons, the Court should immediately release Mr. Simmons on home incarceration and location monitoring to the third-party custody of Tatyana Lee, with a bond co-signed by either Tatyana or Kimberly Lee, and with substance abuse testing and treatment as directed by PTS.

      Respectfully submitted,

/s/ Rahul Sharma, AFPD
(973) 320-7350
rahul_sharma@fd.org

4